1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

**FRESNO DIVISION**

11 ADAM SALAS RAMIREZ,                           Civil No.        1:07cv1896 BTM (JMA)

12                              Petitioner,

13              vs.                              **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

14 KEN CLARK,

15

16                              Respondent.

17 **I.    INTRODUCTION**

18       Adam Salas Ramirez, is a California prisoner serving a sentence of 28 years to life for a first

19 degree murder that took place in 1985.  He has filed an Amended Petition for Writ of Habeas Corpus

20 ("Am. Pet.") pursuant to 28 U.S.C. § 2254 challenging a July 11, 2006, decision of the Board of Parole

21 Hearings ("Board") denying his request for parole.  Ramirez alleges violations of his Fifth, Sixth, and

22 Fourteenth Amendment rights and contends his Parole Board was illegally composed.  Respondent

23 asserts Ramirez has failed to state any grounds for relief.  This Court has reviewed the Amended

24 Petition, Respondent's Answer ("Resp'ts. Mem."), the Traverse, and all supporting documents.  After

25 a thorough review of the record, the Court finds Ramirez is not entitled to the relief requested and

26 orders that the Amended Petition be **DENIED**.

27 **II.   FACTUAL BACKGROUND**

28       Generally, this Court gives deference to state court findings of fact and presumes them to be

correct. 28 U.S.C. § 2254(e)(1) (2006). However, in this case, the state court did not review the original facts of the crime. Thus, the Court has conducted an independent review of the record. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer v. Andrade,* 538 U.S. 63, 73-74 (2003)) (federal habeas court must conduct independent review of record in absence of basis for reasoning in dispositive state court order). The record provides the following facts, found in the 2006 Board decision:

> [] Adam Ramirez and Jeannette Hughes conspired to murder her husband James who had a life insurance coverage of about $442,000. Ramirez and Mrs. Hughes had previously worked together and they may have been romantically involved. During the early morning hours of January 10, 1984, Ramirez parked his vehicle at a restaurant parking lot at Huntington Beach. Ramirez called his 21 year old son and requested that his son pick him up at that location. Ramirez entered his son's vehicle with a rifle, and his son drove him to the Hughes residence at Huntington Beach. Upon arriving Mrs. Hughes was observed peeking through the garage door. Ramirez's son then drove away from the area. Apparently Ramirez entered the residence and shot Mr. Hughes twice in the temple while he was asleep in bed. Ramirez took the victims [sic] wallet and left the area driving their 1981 Toyota Celica. Mrs. Hughes started screaming and awoke another male staying at the residence. At about 3 AM she called the police department and reported the shooting and the theft of their vehicle by an unknown large man. An officer subsequently observed Ramirez driving his vehicle at the restaurant where he had parked his own vehicle. The victim's wallet was found on Ramirez, the rifle used in the offense was [found] in Ramirez's vehicle.

(Resp'ts. Attachment ("Attach.") No. 2 at 46-47.)

## III.    PROCEDURAL BACKGROUND

On January 11, 1984, Ramirez was convicted of the first degree murder of James Hughes. (Attach. No. 1 at 3.) On June 7, 1985, the trial court sentenced Ramirez to a total of 28 years to life for the murder, a firearm enhancement, and a prior offense. (Attach. No. 2 at 60-61.)

On November 28, 2006, Ramirez filed a petition for writ of habeas corpus in Kings County Superior Court challenging a July 11, 2006, decision by the Board of Parole Hearings denying him parole for five years, for a second time. (Attach. No. 1 at 2.) The Superior Court denied Ramirez's petition on December 21, 2006. (Am. Pet. at 49.)

Ramirez filed a habeas petition in the California Court of Appeal which was denied summarily on May 10, 2007. (Am. Pet. at 54.) On October 31, 2007, Ramirez's habeas petition in the California Supreme Court was also summarily denied. (*Id.* at 56.)

On April 7, 2008, Ramirez filed the present Amended Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of California [doc. no. 7]. The State filed an Answer on July 14, 2008 [doc. no. 19]. Ramirez filed a Traverse on July 28, 2008 [doc. no. 20]. On November 25, 2008, this case was reassigned to the Honorable Barry T. Moskowitz as visiting judge from the Southern District of California [doc. no. 21].

## IV.   **SCOPE OF REVIEW**

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Redd v. McGrath*, 343 F.3d 1077, 1080 n.4 (9th Cir. 2003) (provisions of AEDPA apply when state prisoner challenges constitutionality of state administrative decision, such as denial of parole). Section 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in *violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (2006) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007) quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). To obtain federal habeas relief, Ramirez must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

1
2
3
4

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

5   *Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

6   Where there is no reasoned decision from the state's highest court, the Court "looks through"

7   to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the

8   dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must

9   conduct an independent review of the record to determine whether the state court's decision is contrary

10  to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*,

11  223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord*

12  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme

13  Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o

14  long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court

15  precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

16  **V.   DISCUSSION**

17      **A. *Double Jeopardy***

18  Ramirez has been denied parole twice; first on June 6, 2001, and second on July 11, 2006, the

19  latter of which forms the basis of this Petition. (Am. Pet. at 28-47.) Ramirez argues the Board's denial

20  of parole a second time for a five year period, based on the same reasons, violates the Double Jeopardy

21  Clause of the Fifth Amendment and the Due Process Clause of the 14th Amendment. (Am. Pet. at 8-

22  10.)

23  The Double Jeopardy Clause provides that no person shall be "subject for the same offence to

24  be twice put in jeopardy of life or limb." U.S. Const. amend. V. Double Jeopardy protection is applied

25  to the States through the Due Process Clause of the Fourteenth Amendment. *United States v. Stearns*,

26  707 F.2d 391, 393 (9th Cir. 1983). Double Jeopardy protection "serves the function of preventing both

27  successive punishment and successive prosecution" for the same crime. *Witte v. United States*, 515

28  U.S. 389, 395-96 (1995) (internal citations omitted). Ramirez asserts the Board functions as a

1  sentencing court when deciding eligibility for parole and therefore, when it refused parole, and

2  continued his incarceration for a second time, based on the same "finding of guilt of a parole ineligible

3  offense," the Board violated the Double Jeopardy Clause.  (Am. Pet. at 9-10.)  According to Ramirez,

4  "the parole ineligible offense," or the reason for denial of parole, was primarily the gravity of the

5  original commitment offense.

6      While Ramirez correctly notes that Parole Hearing Boards perform a similar function as trial

7  courts, it does not follow that Constitutional Double Jeopardy protection applies to parole decisions in

8  the same way as it applies to judgments of conviction and sentence.  *See O'Bremski v. Maass*, 915 F.2d

9  418, 422 (9th Cir. 1990) (parole board officials functionally comparable to judiciary).   The reasoning

10  for this is explained in *United States v. DiFrancesco*, 449 U.S. 117 (1980) in which the Supreme Court

11  stated:

12          The Double Jeopardy Clause does not provide the defendant with the
            right to know *at any specific moment in time what the exact limit of his*
13          *punishment will turn out to be.*  Congress has established many types of
            criminal sanctions under which the defendant is unaware of the precise
14          extent of his punishment for significant periods of time, or even for life,
            yet these sanctions have not been considered to be violative of the
15          Clause.  Thus, there is no double jeopardy protection against revocation
            of probation and the imposition of imprisonment.  []  There are other
16          situations where probation or parole may be revoked and sentence of
            imprisonment imposed.  []  *[T]hese criminal sanctions do not involve*
17          *the increase of a final sentence, and [] the defendant is aware at the*
            *original sentencing that a term of imprisonment may later be imposed*
18          . . ..

19  *DiFrancesco*, 449 U.S. at 137.  The Supreme Court further stated that a defendant's "legitimate

20  expectations" are not defeated upon parole or probation revocation because the defendant was always

21  aware that revocation was a possibility.  *Id.*  Moreover, even though *DiFrancesco*  involved an appeal

22  from a defendant's original sentence by the government, the Supreme Court stated the appeal did not

23  "in itself offend double jeopardy principles *just because its success might deprive respondent of the*

24  *benefit of a more lenient sentence*."  *DiFrancesco*, 449 U.S. at 132 (emphasis added).

25      In exactly the same way as discussed in *DiFrancesco*, Ramirez has always been aware that

26  parole is only a possibility and that he may end up imprisoned for life under his original sentence of 28

27  years to life.  *See United States v. Brown*, 59 F.3d 102, 104-05 (1995) (per curiam) (parole possibility

28  is part of original sentence).  Ramirez could  legitimately expect to have a parole hearing but not that

1  parole was a certainty.  *See In re Dannenberg*, 34 Cal.4th 1061, 1078-80 (2005) (prisoners serving

2  indeterminate life sentences that include the possibility of parole are not entitled to release on parole,

3  but they are entitled to be considered for parole).  The denial of parole did not increase Ramirez's final

4  sentence just as a revocation of parole has been held not do so.  *DiFrancesco*, 449 U.S. at 137; *see also*

5  *Mahn v. Gunter*, 978 F.2d 599, 602 n.7 (10th Cir. 1992) (parole denial that did not lengthen original

6  sentence did not result in double punishment); *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983)

7  (denial of parole "is neither the imposition nor the increase of a sentence, and it is not punishment for

8  purposes of the Double Jeopardy Clause").  Both denial and revocation of parole result in longer prison

9  time but as enunciated by the Supreme Court in *DiFrancesco*, Double Jeopardy concerns are not

10  triggered merely because a defendant's sentence is not carried out through a more lenient avenue.  *Id.*

11  at 132.

12      In conclusion, because clearly established Supreme Court law holds that double jeopardy

13  protection is not triggered in a review of parole decisions, the Board's reliance on the same factor(s)

14  to twice deny Ramirez parole for five years was not a violation of the Double Jeopardy Clause.  The

15  state court properly denied Ramirez's petition.  *Williams*, 529 U.S. at 412-13.  This claim is **DENIED**.

16      **B. *Reliance on Commitment Offense***

17      Ramirez contends the Board denied him parole primarily based on the gravity of the

18  commitment offense.  He argues because his commitment offense was not unusually callous or

19  egregious, the Board was not legally permitted, after 24 years of imprisonment, to base refusal on this

20  "immutable factor."  *See Irons v. Carey,* 505 F.3d 846, 852 (9th Cir. 2007) (denial of parole may be

21  predicated on a prisoner's commitment offense only where Board can find offense was particularly

22  egregious).

23      The Superior Court issued the last state court opinion addressing this issue.  The court stated

24  that based on the small portions of the transcripts Ramirez had provided from his parole hearings, "the

25  Board clearly states and/or implies that, 'many factors' were considered in reaching its final

26  determination."  (Am. Pet. at 49.)

27      Respondent initially questions this Court's basis for review.  Thus, the Court first addresses the

28  issue of jurisdiction.  Federal courts may only address errors of state law if they rise to the level of a

1  constitutional violation.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).  It is well

2  established that there is "no constitutional or inherent right of a convicted person to be conditionally

3  released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Nebraska Penal &*

4  *Correctional Complex*, 442 U.S. 1, 7 (1979).  Nevertheless, a state can create "a liberty interest

5  protected by due process guarantees" when its parole scheme employs "statutory language [that] itself

6  creates a protectible expectation of parole."  *Greenholtz*, 442 U.S. at 11-12.  The Ninth Circuit has

7  repeatedly held that the mandatory language of California Penal Code section 3041(a)[1] vests inmates

8  with a constitutionally protected liberty interest in a parole date.  *See e.g.*, *Irons v. Carey*, 505 F.3d 846,

9  850 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006);

10  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (holding California's parole scheme gives

11  rise to cognizable liberty interest in release on parole, under framework established in *Greenholtz*).[2]

12      Thus, having decided that, in California, inmates like Ramirez have a federally protected liberty

13  interest in parole, the Court turns to the question of whether due process was satisfied in this case.  It

14  is clearly established Supreme Court law that:

15      [T]he requirements of due process are satisfied if *some evidence* supports the decision
        by the prison disciplinary board . . ..  This standard is met if "there was some evidence

16      from which the conclusion of the administrative tribunal could be deduced. . . ."  *United
        States ex rel Vajtauer v. Commissioner of Immigration*, 273 U.S. [103] at 106 [1927].

17      Ascertaining whether this standard is satisfied does not require examination of the entire
        record, independent assessment of the credibility of witnesses, or weighing of the

18      evidence.  Instead, *the relevant question is whether there is any evidence in the record
        that could support the conclusion reached by the disciplinary board*.

19

20

21

_____

22  [1] CAL. PEN. CODE § 3041(a) states that "prior to [an] inmate's minimum eligible parole release
    date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate

23  *and shall normally set a parole release date*." (Emphasis added.)

24  [2] Respondent "preserves" the argument that prisoners have no federally protected liberty
    interest in parole because the United States Supreme Court has not held so.  Respondent contends that

25  under *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12, the Supreme Court
    reiterated due process only requires an opportunity to be heard and a statement of reasons for the

26  decision, and accepted the "protectible liberty interest in parole" argument only with regard to the
    Nebraska statute before it at the time.  However, as Respondent concedes, the Ninth Circuit has held

27  that California's parole statute is similar to the Nebraska statute in *Greenholtz* because it also creates
    a liberty interest in parole.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir.

28  2006).  Contrary to Respondent's position, this Court is bound by Ninth Circuit precedent and
    therefore rejects Respondent's assertion that Ramirez's due process arguments  are outside the
    jurisdiction of this Court due to the Supreme Court's lack of a definitive establishment of a liberty
    interest in parole.

1:07cv1896

*Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added); *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (applying decision in *Hill* to parole board decisions). The standard outlined in *Hill* is minimal, and assures that "the record is not so devoid of evidence that the findings of the [parole board] were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1128-29 (quoting *Hill*, 472 U.S. at 455-57). A federal habeas court's analysis to determine whether a parole denial was supported by "some evidence" is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Accordingly, like the Ninth Circuit court in *Irons*, here "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [the petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill* . . . ." *Irons*, 505 F.3d at 851.

California prescribes indeterminate sentences for non-capital murders, such as 25 years to life for first degree murder. CAL. PENAL CODE § 190. Parole suitability hearings address the issue of whether prisoners should be released on parole after serving their minimum terms. Ramirez's sentence was 28 years to life because of firearm and prior offense enhancements. (Attach. No. 2 at 60-61.) Pursuant to California Penal Code § 3041, ". . . prior to [an] inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date . . . ." Prisoners serving indeterminate life sentences that include the possibility of parole are not entitled to release on parole, but they are entitled to be considered for parole. *Dannenberg*, 34 Cal.4th at 1078-80. The parole consideration criteria applicable to life prisoners convicted of murder (on or after November 8, 1978) are as follows:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. *Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.*

(b) Information Considered. *All relevant, reliable information available to the panel shall be considered in determining suitability for parole.* Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during

1:07cv1896

1   and after the crime; past and present attitude toward the crime; any conditions of
2   treatment or control, including the use of special conditions under which the prisoner
    may safely be released to the community; and any other information which bears on the
3   prisoner's suitability for release.  Circumstances which taken alone may not firmly
    establish unsuitability for parole may contribute to a pattern which results in a finding
4   of unsuitability.

5   CAL. CODE OF REGS. tit. 15, § 2402 (a) & (b) (2008) (emphasis added).[3]  Sections 2402 (c)[4] and (d)[5]  list

6   specific circumstances tending to show unsuitability and suitability, respectively, for parole and confer

7   on the Board the importance to be attached to each consideration.  It is pursuant to the above California

8   regulations that a panel of the Board must decide whether an inmate would pose an unreasonable risk

9   to public safety if released.

10      The following are the reasons for denial of parole articulated by the Board at Ramirez's second

11   parole hearing on July 11, 2006 (the Court has inserted the corresponding regulations):

12      We considered many factors, but the panel started with the commitment
        offense, and [] that the offense was carried out in an especially cruel and
13      callous manner.  [§ 2402 (c)(1)] James Hughes was shot and killed with
        a rifle.  This was carried out in a very dispassionate and calculated
14      manner such as an execution style murder.  [§ 2402(c)(1)(B)] Again the
        victim was shot while sleeping in his own bed, in his own home.
15      Indications are the victim was shot two times.  The motive for this crime
        was greed . . .  [§ 2402(c)(1)(E)]  With respect to the previous record,
16      the panel noted that there was an escalating panel of criminal conduct,
        and that he'd failed previous grants of probation . . .. [§ 2402(b)]  The

17

18      [3]  Unchanged from the 2006 version.

19      [4]  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section
20   2422(c)." CAL. CODE REGS. tit. 15 § 2421. Guideline circumstances tending to show unsuitability
     include, as pertinent here: (1) the heinousness or cruelty of the commitment offense, in consideration
21   of such factors as the offense "was carried out in a dispassionate and calculated manner, such as an
     execution-style murder;" the motive "for the crime is inexplicable or very trivial in relation to the
22   offense;" (2) the prisoner's previous record of violence, "particularly if the prisoner demonstrated
     serious assaultive behavior at an early age;" (3) unstable social history in relationships with others; (4)
23   psychological factors; and (5) institutional behavior engaging in serious misconduct while
     incarcerated.

24      [5]  "A parole date shall be set if the prisoner is found suitable for parole under Section 2422(d)."
25   CAL. CODE REGS. tit. 15 § 2421. Guideline circumstances tending to show suitability include:  (1) no
     juvenile record; (2) stable social history; (3) signs of remorse, including such indices as performing
26   acts indicating the presence of remorse or giving "indications he understands the nature and magnitude
     of the offense;" (4) the crime was the result of significant stress; (5) battered woman syndrome; (6)
27   lack of any significant history of violent crime; (7) the prisoner's age reduces the probability of
     recidivism; (8) realistic plans for the future upon release, or development or marketable skills that can
28   be put to use upon release; and (9) institutional behavior and activities "indicating an enhanced ability
     to function within the law upon release."

panel noted that [Ramirez] did have prior criminality consisting of probation violations, grand theft, multiple driving under the influence, hit and runs, and that [he was] on probation during the time of the commitment offense. [§ 2402(b) and (c)(2)]  Other things the panel considered is that you chose to involve your son in this criminal act. [§ 2402(b)]  With respect to your institutional behavior . . . [y]ou failed to develop a marketable skill that can be put to use upon your release. [§ 2402(b)]  And you failed to upgrade as previously recommended by the board vocationally, and also as previously recommended by the board, you haven't sufficiently participated in beneficial self-help programs such as AA, NA, or Anger Management. [*Id.*]  Misconduct while incarcerated, your last 128A counseling chrono was actually a 115 that was reduced and this was on January 8th, of 2006 for disobeying an order, and your last serious 115 July 5 of 1994 and that was for participating in a work strike. [*Id.*]  So far as the psychological report that was prepared in May of 2001 by Dr. Miller, it's not totally supportive of a release. [*Id.*]  Indications are in the report.  Records indicate the inmate has not participated in any available self-help or therapy programs, when asked about this inmate Ramirez said, 'I don't have time, I'm working on my case.'  [*Id.*]  When not at work, he focuses his attention on going to the law library, and working on his appeal. He expressed no real interest in attending AA, since he does not view that he has a drinking problem.  [*Id.*]  He displays limited insight relative to his use of alcohol and its impact on others.  [*Id.*]  For the record I will note that this report was done again in May of 2001.  With respect to a state of sobriety, the violence potential in the community is considered average for the male prison population.  The doctor also noted that he's shown no interest in personal change, increasing educational skill, or involvement in AA as recommended at the Board of Prison Terms hearing in 1999. [*Id.*]  []  With respect to the parole plan, essentially, there is nothing that's verified before the panel today that would support housing, financial support, offers of employment and with respect to the work you'd be seeking, there's some question with respect to your marketable skills for the type of work that you'd be indicated [sic] that you'd seek.  [§ 2402(b)]

(Am. Pet. at 40-45.)    From the foregoing, it is clear the Board did not base denial of parole only on the nature of the commitment offense or any other immutable factor.  Several other grounds for denial were cited by the Board.

While Ramirez admits the Board cited other factors, he asserts those factors were improper considerations and unsupported by the evidence.  Ramirez argues that "some evidence" must relate to a regulatory factor, implying that the Board's decision was not based on regulatory or statutory factors. (Am. Pet. at 23.)  In making this claim, Ramirez limits the regulations that the Board was able to consider to section 2402 (c)'s "unsuitability factors," claiming that because his prior crimes were non-violent, his circumstances did not meet any of the unsuitability factors of subsection (c).  However, the Board's decision made reference to all the available criteria under section 2402, including subsections

1:07cv1896

(b) (text above) and (d) (text in fn.5, p. 9).  *See In re Bettendorf*, 156 Cal.App.4th 780, 801 ("The applicable regulations provide that any of the factors listed in section 2402 as tending to show parole suitability or unsuitability, including the unchanging factor of the commitment offense, may be relevant to the Board's determination of current risk.").  In doing so, the Board focused especially on the fact that Ramirez has not made use of programs to ready himself for release.  (Am. Pet. at 44-45.)  For example, the Board found he did not have current marketable skills and continued to deny the role and effect of alcohol in his life (even though some of his past crimes were DUIs).  (*Id.* at 42-45.)  The Board also stated Ramirez had not participated in other self-help programs as recommended by the Board in his previous hearing, based on a 2001 psychological report.  (*Id.*)  The Board also noted that both the Orange County District Attorney and the police department representatives were opposed to parole.  (*Id.*)  The Board backed each conclusion with a reasoned reference to Ramirez's record of behavior before, during, and after the commitment offense.  (*Id.*)

Even if the Board had only relied on the commitment offense, such reliance was supported by some evidence that the offense was particularly egregious, that is, "carried out in a dispassionate and calculated manner," was "especially cruel and callous," and the motive for the crime was "very trivial in relation to the offense."  *See* § 2402 (c)(1) (unsuitability factors); (Am. Pet. at 40-45).  For example, in the 2001 and 2006 hearings the Board noted that the motive of financial gain was trivial compared to the crime, that the victim was shot while asleep in his own bed and in his own house, and that this was previously planned between the victim's wife and Ramirez, implying time and opportunity for reflection.  (Am. Pet. at 29-48.); *see also Biggs* at 916 ("Materials from another tribunal are appropriate for judicial notice.")  Although Ramirez correctly references the cases of *Biggs* and *Sass,* to argue continued reliance by a Board on only the unchanging factors of the commitment offense and prior offenses may result in a due process violation, even in those cases the Ninth Circuit upheld the denial of parole solely on the immutable factors cited by the Parole Board.  *See Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003) (continued reliance on an unchanging factor is contrary to rehabilitative goals and could at some point in future violate due process); *Sass,* 461 F.3d at 1129 (acknowledging continued reliance on immutable factors could lead to due process violation).  Thus, far from creating a yardstick by which to measure the continuing relevance of immutable factors, *Biggs* and *Sass* merely

1   held that "given the particular circumstances of the offenses in these cases, due process was not violated

2   when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum

3   terms." *Irons v. Carey*, 505 F.3d 846, 853-54 (9th Cir. 2007).[6]

4         Because there was "some evidence" to support the Board's denial of parole, pursuant to the Due

5   Process Clause, the state court's denial of this claim was neither contrary to, nor an unreasonable

6   application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d); *Lockyer,* 538 U.S. at 71.

7   Ramirez's claim is **DENIED**.

8         **C.** *Sixth Amendment right to jury trial*

9         Ramirez contends that each parole denial by the Board was "a unilateral finding of guilt of a

10   parole ineligible offense contrary to the actual conviction, which is a direct violation of petitioner's

11   Sixth amendment right to a jury trial." (Am. Pet. at 10.)  For this proposition, Ramirez cites *Blakely*

12   *v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  These cases

13   do not apply to parole hearings.

14         The Sixth Amendment guarantees a defendant "the right to a speedy and public trial, by an

15   impartial jury." U.S. Const., amend. VI.  The cases of *Blakely* and *Apprendi* expressed and applied the

16   rule that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

17   beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

18   doubt.'"  *Blakely*, 542 U.S. at 301; quoting *Apprendi*, 530 U.S. at 490.  In other words, the purpose of

19   the rule is to prevent a judge from imposing a sentence greater than the maximum permitted by state

20   law based on a fact not found beyond a reasonable doubt by a jury.  *Id*. at 491-97.  Ramirez is not

21   contending, nor is there any evidence showing, that the Board's denial of parole increased Ramirez's

22   sentence beyond the maximum permitted by state law.  Ramirez's sentence was and continues to be 28

23   years to life.

24         Moreover, unlike initial trial and sentence, parole proceedings are not part of a criminal

25   prosecution, and "the full panoply of rights due a defendant in such a proceeding is not constitutionally

26   ────────────────────

27         [6] The Ninth Circuit may clarify how to measure the decreasing relevance of immutable factors
    over time when the pending *en banc* review of *Hayward v. Marshall*, 512 F.3d 536 (9th Cir.), *reh'g*
    *en banc granted*, 527 F.3d 797 (9th Cir. May 16, 2008), is decided.  A number of courts have granted
28   stay requests in federal habeas cases arising from parole denials pending the *Hayward* decision.

mandated, even when a protected liberty interest exists." *Pedro v. Oregon Parole Bd.*, 825 F.2d 1395, 1399; citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Thus, Ramirez does not have the right to have a jury find "guilt of a parole ineligible offense."  (Am. Pet. at 10.)  As stated earlier, Ramirez's rights are limited to: a parole revocation hearing but not a grant of parole, *Dannenberg,* 34 Cal.4th at 1078-80; and parole denial based on "some evidence" in line with *Hill,* 472 U.S. at 455-56.

Because Ramirez did not have a Sixth Amendment right to have his parole denial decided by a jury, the state court's denial of his habeas petition was not contrary to or an unreasonable application of clearly established federal law.  *Williams*, 529 U.S. at 412-13.  This claim is **DENIED**.

### D. *Whether Parole Board was Illegal*

Ramirez contends the Board was "illegal" because the commissioners were appointed in violation of California Penal Code section 5075, and that the Board exhibited institutional bias as shown by its historical reluctance to release individuals on parole.  Ramirez provides no more than the above conclusory statements; he does not state his argument with any more particularity or present any evidence to support his claims. *See Jones v. Gomez*, 66 F.3d 199, 205 (1995) (conclusory allegations which are not supported by statement of specific facts do not warrant habeas relief).

Section 5075 became effective on July 1, 2005, and encompasses several technical provisions: changing the Board of Prison Terms to the Board of Parole Hearings, citing the number of commissioners that need to be appointed by the Governor, the areas in which commissioners will be trained, the terms they are to serve, their diverse make up, the designation of a chair, and description of their duties. CAL. PEN. CODE § 5075.  Ramirez does not specify in what way the appointment of commissioners on his Board violated any of the above provisions.

The Court acknowledges that due process in parole hearings requires a "neutral and detached" hearing body. *O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990) (because parole board officials are functionally comparable to judiciary, they owe same duty to render impartial decisions); citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (neutral and detached hearing body includes traditional parole board).  However, "[i]n attempting to make out a claim of unconstitutional bias, a [petitioner] must 'overcome a presumption of honesty and integrity' on the part of the decision-makers." *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

1:07cv1896

1    Ramirez has not shown that the Board "prejudged or reasonably appears to have prejudged" the

2    bases for denying him parole.  *See Stivers*, 71 F.3d at 741 (internal citations omitted).  He has not

3    shown either *actual bias* or an *appearance of partiality*, "[n]or would the Board's repeated unfavorable

4    rulings, standing alone, be sufficient to support a claim that [] any [] member of the Board was actually

5    biased against him."  *Id.* at 741-42 citing *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1224

6    (9th Cir. 1990) ("Adverse rulings alone are not sufficient to require recusal, even if the number of such

7    rulings is extraordinarily high.").

8         Ramirez's claims are insufficient to overcome the presumption of honesty and integrity

9    accorded to the Board.  He has not presented any evidence showing illegality by his Board.  The state

10   court's denial of his habeas petition was thus not an unreasonable application of, or contrary to clearly

11   established federal law.  *Williams*, 529 U.S. at 412-13.  This claim is **DENIED**.

12   VI.   **CONCLUSION**

13        For all the foregoing reasons, **IT IS HEREBY ORDERED** Ramirez's Petition for Writ of

14   Habeas Corpus is **DENIED** in its entirety, terminating this action.

15   DATED:  September 3, 2009

16

17   Honorable Barry Ted Moskowitz

18   United States District Judge

19

20

21

22

23

24

25

26

27

28

14

1:07cv1896